**McDOWELL–PURCELL, INC.,**
a corp., Plaintiff,

v.

**MANHATTAN CONSTRUCTION COMPANY, a corp., Defendant.**

Civ. A. No. 72–G–823–J.

United States District Court,
N. D. Alabama,
Jasper Division.

March 25, 1974.

James E. Clark, London, Yancey, Clark & Allen, Birmingham, Ala., for plaintiff.

Gerald G. Stamper, Thornton & Stamper, Tulsa, Okl., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GUIN, District Judge.

This cause coming on for trial and the court having heard the evidence of the witnesses ore tenus and considered the exhibits introduced herein, the court enters the following findings of fact and conclusions of law:

(1) On to-wit the 9th day of May, 1969, the parties hereto entered into the subcontract agreement identified during the trial of this cause as Plaintiff's Exhibit 1, by virtue of which the plaintiff, McDowell-Purcell, Inc., (sometimes hereinafter referred to as "McDowell" and also as "subcontractor") stipulated as follows:

"To furnish all materials (except reinforcing steel materials) labor, equipment and supplies including all applicable taxes and insurance required for the concrete caissons at the following unit prices; also the furnishing and setting of a 24″ pipe casing all in accordance with Plans and Specifications prepared by Southern Services, Inc. for the Alabama Power Company, Substructure Construction, Gorgas Steam Plant—Unit No. 10, Inquiry No. AP–7923—"

The plans and specifications relating to substructure construction at Gorgas Steam Plant hereinbefore mentioned were identified as Plaintiff's Exhibit 2, and the court concludes in determining the rights of the parties herein that due consideration and substantial significance must be given to the obligation of the defendant, Manhattan Construction Company (hereinafter sometimes referred to as "Manhattan" and also as "prime contractor") to the Alabama Power Company thereunder, including but not limited to the following excerpts therefrom:

A. "SECTION I

GENERAL

SCOPE

These specifications are intended to cover the following items of work in connection with the construction of the Purchaser's Gorgas Steam Plant —Unit No. 10. The Contractor shall perform all operations of work required and shall furnish all supervision, labor, equipment, tools, plant, and all materials (* * * * * *)

required to satisfactorily complete the specified work.

\* \* \* \* \* \*

Removal of ground water and surface water as required to keep the excavations sufficiently dry to allow construction to progress as scheduled.

\* \* \* \* \* \* ,,

B. "SECTION II

### EARTHWORK, ROCK WORK AND UNWATERING

SCOPE

The Contractor shall perform the items of work specified below:

\* \* \* \* \* \*

Removal of surface and ground water, and keeping working areas sufficiently dry to allow construction to progress as scheduled.

\* \* \* \* \* \*

UNWATERING OF GROUND WATER

In order to perform the excavation for the powerhouse, the water passages, intake-discharge structure and chimney foundation, the removal of ground water will be required.

\* \* \*

The unwatering system for removal of ground water will have to be installed during excavation operation.

\* \* \* \* \* \*

The Contractor will be responsible for pumping out the existing° pond and shall also be responsible for keeping the excavated areas workably dry and he shall furnish, install, operate, maintain, and remove all unwatering equipment required to perform his work.

\* \* \* \* \* \*

SURFACE DRAINAGE

The Contractor shall be responsible for surface drainage water in the areas in which he is working, and all pumping required shall be done by the Contractor at the Contractor's expense. Cuts and fills shall be made in such a manner as to avoid pockets and to allow water to run off without ponding. All temporary drainage facilities for surface water shall be furnished by the Contractor at the Contractor's expense. \* \* \* \* \*.

\* \* \* \* \* \*

UNWATERING OF GROUND WATER

Each Bidder shall quote a total price for furnishing all equipment and performing all operations of work required for pumping out the existing pond after the earth dike is placed and for installing, maintaining, operating and removing the unwatering system. \* \* \* \*.''

(See Plaintiff's Exhibit 2, Pages 2–1, 2–4, 2–5, and 2–9.)

In respect to the last quoted requirement, the specifications further show that Manhattan quoted the lump sum price of $26,609.00 "For pumping out pond and unwatering as specified." Plaintiff's Exhibit 2 further shows that the prime contractor quoted unit prices for caissons and other pipe casings approximately twenty per cent (20%) in excess of the prices for said work which it obtained from the plaintiff. (See Page 3 of the specifications.) In other words, defendant contracted with the owner for a profit of twenty per cent (20%) on the work which it had subcontracted to McDowell. According to the evidence, Manhattan was paid by the Alabama Power Company, with whom it had contracted for "unwatering" and the caisson work which was performed by McDowell. In further connection with its "unwatering" obligation, it is shown on page 14 of the specifications that the defendant proposed to subcontract this phase of the work to John W. Stang Corp. of St. Petersburg, Florida, but under the evidence the same was not performed by Stang, being undertaken by Manhattan itself.

## C. "SECTION III

### ROCK SUPPORTED FOUNDATIONS FOR POWERHOUSE

#### SCOPE

This section of the Specifications is intended to cover the furnishing of all materials, equipment, labor and supervision required for drilled piers (concrete caissons) and fill concrete as required to support the Unit No. 10 powerhouse building for Gorgas Steam Plant; * * * * *.

#### CAISSONS

* * *. Foundations under the powerhouse shall be drilled piers (concrete filled caissons) down to sound rock to permit inspection of the bearing surface. These shall be of various sizes from 3′ to 10′ in diameter as indicated in the proposal form and as will be shown on the Purchaser's approved drawings. It is estimated that approximately 300 caissons will be required. * * *.

* * *. Each caisson shall have a protective casing, the bottom of which shall be seated in rock and sealed to prevent seepage of water and then thoroughly cleaned.

* * * * * *

Prior to placing concrete for caissons, the caisson excavation shall be clean and free of any foreign matter and water. No concrete shall be placed for caissons until after each is approved by the Purchaser's Superintendent."

(See Plaintiff's Exhibit 2, Pages 3–1 and 3–2.)

In reaching its decision here, the court concludes and so finds that in the performance of its own obligations under the plans and specifications relating to *"Rock Supported Foundations for Power House"* as above quoted and as a condition precedent thereto, McDowell was entitled to rely upon, and did in fact, to its detriment, depend upon the fulfillment by the defendant prime contractor of its responsibilities as contracted for with the Alabama Power Company and as more particularly stated in paragraphs A. and B. hereinbefore set out. The court further finds in this regard, and attaches some significance thereto, that Manhattan not only agreed to complete the "unwatering" of the work site as specified for the unit price of $26,209.00, but did in fact secure the approval by Alabama Power Company of John W. Stang Corp. as its "Unwatering Subcontractor" although it did not employ its services in this connection.

(2) The court concludes and further finds that the obligations of Manhattan, as spelled out in Plaintiff's Exhibit 2, and the responsibilities of the plaintiff and defendant, each to the other, as described in their subcontract agreement, Plaintiff's Exhibit 1, are not ambiguous; however, as regards the latter, in the event of any uncertainty therein, the intendments of said subcontract are to be construed favorably in behalf of McDowell because Manhattan was the scrivener thereof and had the opportunity of making more specifically known to the plaintiff the terms of their agreement in respect to any doubtful stipulations contained therein.

(3) The court finds that although, after a fashion and for which it was compensated, Manhattan undertook the "unwatering" of the work site, including the locus of excavations where caissons were to be placed on the premises of construction, it did not do so sufficiently to prevent the plaintiff from being required to perform its work on many caissons at places where the project was not "unwatered" as it had the right to expect. In this connection, the court further finds that in complying with the demands forced upon it by Manhattan via representatives of the Alabama Power Company and vice versa, the plaintiff was made to incur additional expense and to suffer extra costs and delay in the performance of its work which had not been contemplated by the parties and to which it had not agreed. In this

regard, the court finds that said demands were in many instances, and particularly as relates to the handling of water in caisson holes, unreasonable, arbitrary, and sometimes capricious; and, further, that in its compliance with the directions and demands made upon it as concerns the "unwatering" of its work, plaintiff in large measure discharged an obligation of Manhattan to Alabama Power Company for which McDowell-Purcell was not responsible under its subcontract with the defendant:

(4) In the foregoing connection, the court finds that very soon after the plaintiff engaged upon its subcontract for the construction of caissons, conditions were encountered at the work site whereby large and unusual quantities of water had to be contended with by McDowell, resulting in increased cost and delay in the performance of its work. The court finds that this condition consisted in the main of ground water which came from within the ground itself or from rock strata beneath the overburden of earth which covered said rock and which was the obligation of Manhattan to excavate and "unwater." In some degree, plaintiff was also required to handle surface water which was the primary responsibility of the defendant, Manhattan, and also at increased expense and delay. During the course of attempting to construct caissons under the rigid and oftentimes unreasonable requirements imposed upon it by Manhattan at the insistence of Alabama Power Company, McDowell was compelled to fully seal and water-plug numerous caissons and to a degree beyond that contemplated by its subcontract with Manhattan, and was also delayed in the pouring of concrete in caisson holes until it had made the same completely dry and to an unnecessary degree. The court finds that the plaintiff protested its being required to perform its work and to unwater and seal the caisson holes as aforementioned, but proceeded to do so with a full reservation of its rights to claim additional compensation therefor; in which connection see Plaintiff's Exhibit 31 confirming in writing the position taken by McDowell via a letter written by its counsel of record herein to the defendant, which under the evidence is acknowledged to have been received.

(5) The court further finds that on or about November 18, 1969, the plaintiff, through its president, Bruce Purcell, threatened to remove its equipment and personnel from the project if required to continue to complete sealing and water-plugging of caisson holes as previously exacted of said subcontractor over its protest as hereinbefore mentioned. The court finds that on this occasion it was stipulated between the parties that in the placing of subsequent caissons, the plaintiff would be required to only *partially* water-plug those where water was encountered at the bottom of the hole and would not be compelled to completely seal the same as it had previously. In this connection, McDowell was directed to keep records relating to its expense in water-plugging and unwatering caisson holes under these terms, which it did, with its costs being acknowledged by the written signature of the defendant's superintendent on the job who was instructed by Manhattan to check the same. The court is of the opinion that the circumstances under which McDowell was directed to proceed in late November with partially sealing caissons by the water-plugging method were such that it was entitled to expect reasonable compensation therefor, and it is of consequence that the defendant's project manager, Mr. Roberts, conceded during the course of his testimony that he did not advise the plaintiff that reimbursement was contingent upon Manhattan's obtaining additional compensation from Alabama Power Company until after McDowell-Purcell had already accomplished the remainder of its work.

■■ In view of the foregoing, the court concludes and so finds that the plaintiff is entitled to have and recover of the defendant the sum of Twenty-one Thousand, Two Hundred Ninety-one Dollars and Forty-four Cents ($21,291.-

44) as represented by Plaintiff's Exhibits 40, 41, 42, and 43, and for the furnishing of labor and material as referred to therein on the basis of the charges therefor being reasonable, the work being authorized, and the same being performed in the discharge of an obligation of the defendant for which the plaintiff had not subcontracted. The court also concludes and so finds that McDowell-Purcell is entitled to a reasonable profit on said work equivalent to fifteen per cent (15%) of the value thereof, which amounts to Three Thousand One Hundred Ninety-three Dollars and Seventy-two Cents ($3,193.-72). The court also finds the plaintiff due to be paid interest on the charges represented by the aforementioned invoices which are summarized on Plaintiff's Exhibit 39 and upon the fifteen per cent (15%) profit due it thereon from May 4, 1970, which is the date of McDowell-Purcell's last invoice to Manhattan relating to this part of its claim.

■ (6) While the court concludes and finds that the plaintiff is also entitled to reasonable compensation for the increased costs and delay to which it was subjected in completing the first eighty (80) caissons constructed by it under its subcontract agreement with the defendant and prior to November 19, 1969, the problem of arriving at its damages in this regard is more difficult in that no precise accounting was attempted, breaking down the subcontractor's increased costs and expense in this connection.

Mr. Bob Long, plaintiff's project manager, and a witness of many years experience in caisson construction, whose testimony was accepted by the court as that of an expert in his field, has testified that in his judgment and without regard to the formulas for arriving at McDowell's increased cost for the first eighty (80) caissons as are reflected in Plaintiff's Exhibits 45–47a, that Forty-six Thousand, Eight Hundred Eighty-six Dollars and Forty Cents ($46,886.40) would be reasonable compensation therefor. Bruce Purcell, plaintiff's president

and also an expert in the field of caisson construction of many years experience, has testified that without resort to the averaging of cost of caisson formulas employed in said exhibits, a reasonable increase in cost of placing the first eighty (80) caissons by McDowell-Purcell, Inc., under the conditions which obtained would run from Five Hundred Dollars ($500.00) per caisson to Five Hundred Eighty-six Dollars and Eight Cents ($586.08). The opinion testimony and judgment of these plaintiff's witnesses was not substantially contradicted and the court was impressed by their demeanor on the stand, their experience, and their ability and opportunity to arrive at the judgments of increased costs for the first eighty (80) caissons as sworn to by them. The court, therefore, concludes and finds that the plaintiff is entitled to have and recover of the defendant the sum of Forty Thousand Dollars ($40,000.00) as additional compensation due it for its increased cost of the construction of the first eighty (80) caissons on the project and with interest thereon from November 20, 1969.